IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESUS BROWN,<br><br>Plaintiff,<br><br>vs.<br><br>DR. DOEL, Nebraska Department of Correctional Services Medical Director, individually and in their offiacl capacities; GARY J. HUSTAD, MD, individually and in their offiacl capacities; CHERYL FLINN, Physician Assistant, individually and in their offiacl capacities; VAUGHAN WENZEL, Physician Assistant, individually and in their offiacl capacities; and DAN DANAHER, Physician Assistant, individually and in their offiacl capacities;<br><br>Defendants. | 4:18CV3020<br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS") and currently confined at the Lincoln Correctional Center ("LCC"), brings this 42 U.S.C. § 1983 action in which he complains that NDCS medical staff have been deliberately indifferent to his medical needs. He has been given leave to proceed in forma pauperis. (Filing No. 10.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

# I. SUMMARY OF COMPLAINT

Plaintiff filed this § 1983 action against Dr. Deol,[1] the NDCS Medical Director; Gary J. Hustad, M.D., a doctor responsible for NDCS inmates housed at LCC and the Diagnostic & Evaluation Center ("DEC"); and Physician Assistants ("P.A.") Cheryl Flinn, Vaughan Wenzel, and Dan Danaher in their official and individual capacities. Plaintiff claims the Defendants have failed to provide him medical treatment in violation of the Eighth Amendment.

Plaintiff alleges he entered NDCS custody with an existing back injury from a car accident for which he had been receiving treatment. Upon admission at the DEC, Plaintiff informed NDCS medical staff of his back injury and pain, as well as medical issues with his neck, feet, hand, elbow, shoulder, and knee. Plaintiff asserts that his medical conditions are documented in his medical records, in MRI's, and by specialists, and that the Defendants are "well aware of the plaintiff's medical issues and still wish to not treat him for them as they should be." (Filing No. 1 at CM/ECF p. 3.) More specifically, Plaintiff alleges that the Defendants have not provided him pain medication "even though the[re] is written documentation and [a] specialist that say he needs pain medication." (*Id.*)

Attached to Plaintiff's Complaint are copies of several "Inmate Interview Requests" (hereinafter "IIR") which indicate that Plaintiff has complained to the NDCS medical staff about his pain and medical issues since at least early September 2017. (*See* Filing No. 1-1.) The IIRs reveal, inter alia, that Plaintiff has a known diagnosis for neuropathy and, in approximately November 2017, Plaintiff was given the medication Gabapentin for his pain issues, rather than Lyrica as was recommended by another doctor. (*Id*. at CM/ECF pp. 3, 14.) On or about

---

[1] Plaintiff refers to this defendant as "Dr. Doel." However, the correct spelling of this defendant's surname is "Deol." *See* https://corrections.nebraska.gov/about/staff/harbans-deol-do (last visited August 23, 2018). The court will utilize the correct spelling.

December 7, 2017, Plaintiff saw a Dr. Kasselman[2] who did "not believe Gabapentin [was] indicated for [Plaintiff's] pain" and the decision was made to "taper[] off" the Gabapentin and prescribe muscle relaxants and injections in Plaintiff's back instead, as well as offering to replace Plaintiff's ibuprofen with indomethacin. (*Id*. at CM/ECF p. 8.)

Thereafter, on January 7, 2018, Plaintiff complained in an IIR addressed to the warden that he "strongly disagree[d]" with the medical staff's decision to take him off all his pain medications as he was still experiencing extreme pain. (*Id*. at CM/ECF p. 11.) Plaintiff received the following response:

> Your medical concerns have been discussed with medical staff and although you may not be prescribed the medications you would like, you are being treated. You are currently being prescribed medications to treat the symptoms of the pain.
>
> As an agency, Gabapentin prescriptions are being significantly reduced.

(*Id*.)

Subsequently on or about January 17, 2018, in response to Plaintiff's complaints of pain and to be prescribed Gabapentin again, Defendant Dr. Hustad stated that he would "discuss [Plaintiff's] case with Mr. Danaher PA-C (the LCC provider) and develop a follow up plan for [his] chronic pain complaints." (*Id*. at CM/ECF p. 13.) The remaining IIRs submitted by Plaintiff after January 17, 2018, show that sick calls were scheduled in response to Plaintiff's continued complaints of pain. (*See id*. at CM/ECF pp. 4–6.)[3]

---

[2] Plaintiff does not name Dr. Kasselman as a defendant, nor does Plaintiff allege any claims against him.

[3] Plaintiff filed a supplement containing copies of additional IIRs and grievances related to his medical complaints on August 22, 2018, which was not entered on the docket until August 24, 2018, the same date as the entry of this order. (Filing No. 15.) Plaintiff indicates that he has

As relief for the Defendants' alleged deliberate indifference to Plaintiff's medical needs, Plaintiff seeks declaratory and injunctive relief, $500,000.00 in compensatory damages, and $500,000.00 in punitive damages against each Defendant.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)

---

been put back on Gabapentin as of July 31, 2018, but maintains that he is still in extreme pain and medical is refusing to provide necessary medical treatment. (*Id.* at CM/ECF pp. 1, 86–87.) The court has reviewed Plaintiff's supplement and concludes that it does not change the court's analysis below given the liberal construction afforded pro se litigants' pleadings.

4

(quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III. DISCUSSION

**A. Sovereign Immunity**

Plaintiff has sued Dr. Deol, Dr. Hustad, and P.A.s Finn, Wenzel, and Danaher in their official and individual capacities for declaratory, injunctive, and monetary relief. Thus, the first question the court must address is to what extent, if any, the Eleventh Amendment bars his claims.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to

5

cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

Plaintiff's claims for monetary relief and for a declaration of past constitutional violations against the Defendants in their official capacities are barred by Eleventh Amendment sovereign immunity. *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam) (section 1983 provides no cause of action against agents of the state acting in their official capacities; sovereign immunity bars claim against state-agency employees for monetary damages under federal act); *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) ("a declaratory judgment establishing *past* liability of the State is . . . forbidden by the Eleventh Amendment" (italics in original) (citing *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 646 (2002))); *Hansen v. Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) ("A declaratory judgment establishing only the **past liability** of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." (bold in original)).

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Plaintiff's claims for money damages and declaratory relief[4] against Dr. Deol, Dr. Hustad, and P.A.s Finn, Wenzel, and Danaher in their official capacities are barred by the Eleventh Amendment and must be dismissed.

Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacities are not barred by sovereign immunity. Thus, the court next considers whether Plaintiff has stated plausible claims for relief under the Eighth Amendment.

---

[4] It is clear from Plaintiff's Complaint that he seeks only declaratory relief for past liability. (*See* Filing No. 1 at CM/ECF p. 5.)

## B. Eighth Amendment Claim

To prevail on an Eighth Amendment claim, Plaintiff must prove that the Defendants acted with deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more than gross negligence, and mere disagreement with treatment decisions does not reach the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). A prisoner's mere disagreement with the course of his medical treatment fails to state a claim against a prison physician for deliberate indifference under the Eighth Amendment. *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004).

"[T]he knowing failure to administer prescribed medicine can itself constitute deliberate indifference." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 796 (8th Cir. 2006). "When an official denies a person treatment that has been ordered or medication that has been prescribed, constitutional liability may follow." *Dadd v. Anoka Cty.*, 827 F.3d 749, 756–57 (8th Cir. 2016) (right to adequate medical treatment was clearly established when pretrial detainee arrived at jail after dental surgery with Vicodin prescription for severe pain and deputies and jail nurse acted with deliberate indifference by ignoring detainee's complaints of pain and requests for treatment). *See also Foulks v. Cole Cty., Mo.*, 991 F.2d 454, 455-57 (8th Cir. 1993) (holding there was liability where jail officials disregarded an instruction sheet from the plaintiff's doctor, ignored complaints of sickness and pain, and

refused requests for medical care); *Majors v. Baldwin*, 456 Fed. App'x 616, 617, 2012 WL 739347 (8th Cir. 2012) (unpublished) (holding that plaintiff had stated a deliberate indifference claim where defendants withheld prescribed pain medication and did not provide adequate post-operative treatment); *Motton v. Lancaster Cty. Corr.*, No. 4:07CV3090, 2008 WL 2859061, at *6 (D. Neb. July 21, 2008) (noting that the knowing failure to administer prescribed medicine can constitute deliberate indifference, but to establish constitutional violation, inmate must produce evidence that delay in providing medical treatment had detrimental effect on inmate).[5]

With these standards in mind, the court will examine Plaintiff's claims against each of the named Defendants.

---

[5] See also *Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004) (prison doctor's failure to follow directions of outside specialist raises inference of deliberate indifference); *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (prison doctor and nurse's refusal to dispense narcotic pain reliever prescribed by outside surgeon following inmate's surgery "would give rise to liability under section 1983"; validity of medical personnel's explanation for refusal to give prescribed medicine to inmate was "an issue for the jury"); *Medrano v. Smith*, No. 05-1092, 161 Fed. App'x 596, 2006 WL 27711 (7th Cir. Jan. 6, 2006) (prison doctors' failure to exercise any medical judgment by investigating, diagnosing, or treating inmate's increasing pain when doctors knew of prisoner's prior surgeries, in addition to stopping prescriptions authorized by other physicians without explanation, stated claim against prison doctors). *But see Hairston v. McGuire*, 57 F. App'x 788, 789, 2003 WL 157554 (10th Cir. 2003) (no Eighth Amendment claim for deliberate indifference to serious medical needs when prison nurse changed Motrin prescription following inmate's jaw surgery to Tylenol based on inmate's prior diagnosis of Hepatitis C); *Williams v. Bearry*, No. 00-60731, 2001 WL 1085197, at *3 (5th Cir. Sept. 7, 2001) (per curiam) (unpublished) (prison doctor is a primary physician and not required to follow consulting surgeon's exact regimen); *Berry v. Fitts*, No. CIV. A. C-09-3, 2010 WL 345750, at *9 (S.D. Tex. Jan. 22, 2010) (unpublished) (adopting Magistrate Judge's Recommendation) (refusal of prison physician to prescribe Tylenol #3, as prescribed by surgeon, for pain management in advance of unscheduled surgery was "no more than a mere disagreement with the course of treatment provided, and not deliberate indifference"; prison doctor found surgeon's prescription inappropriate because Ibuprofen had worked in past for prisoner, Tylenol #3 is not recommended for prolonged periods of time, especially for patients with history of drug or alcohol addiction, and Ibuprofen could be taken up to three days before as-yet unscheduled surgery).

*1. P.A. Cheryl Flinn*

Plaintiff alleges P.A. Flinn worked at the DEC and was deliberately indifferent to his medical needs. (Filing No. 1 at CM/ECF p. 2.) When Plaintiff told P.A. Flinn about his back and neck pain on December 30, 2016, he alleges she laughed at him and did not treat him for his pain. (*Id.* at CM/ECF pp. 2, 4.) These factual allegations are insufficient to state a claim against P.A. Flinn.

"Although laughter might be inappropriate bedside manner, it does not amount to an Eighth Amendment violation." *White v. Pernoud*, No. 2:04CV23 JCH, 2006 WL 1876959, at *3 (E.D. Mo. July 5, 2006) (citing *Owens v. Cuyler*, 1989 WL 79737 (E.D. Pa. 1989)). At most, this isolated incident may rise to the level of neglect, but it does not rise to the level of deliberate indifference. There are no facts alleged that suggest P.A. Flinn had any other involvement in Plaintiff's treatment beyond this one encounter or that his treatment was delayed or hindered in any way because of P.A. Flinn's conduct. *See Franklin v. Frakes*, No. 8:16CV470, 2017 WL 1968269, at *5 n.10 (D. Neb. May 11, 2017) (failure to receive timely medication refills on two occasions and one rescheduled sick call insufficient to state a deliberate indifference claim particularly when no harm allegedly suffered as a result). As such, Plaintiff has failed to state a plausible Eighth Amendment claim against P.A. Flinn, and his claim against her is dismissed.[6]

---

[6] For the sake of completeness, the court notes that Plaintiff's claim for prospective injunctive relief against P.A. Finn is also moot as he is no longer confined at the DEC. *See Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001) (when actions required by injunction would be impossible for correctional-center defendants to execute because plaintiff was moved to another institution, plaintiff's claims for injunctive relief against defendants were moot); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (concluding that claim for injunctive relief against warden was moot because prisoner was transferred to another prison).

*2. P.A. Vaughan Wenzel*

Plaintiff alleges P.A. Wenzel, a physician assistant at the DEC, "showed Deliberate Indifference to the Plaintiff's medical needs when he was told by the Plaintiff that he was having Medical needs and was in pain and he did nothing to treat him." ([Filing No. 1 at CM/ECF p. 4](#).)

Liberally construing the Complaint, Plaintiff has alleged serious medical needs. See *[Ellis v. Butler](#)*, [890 F.2d 1001, 1003 (8th Cir. 1989)](#) ("Because it is difficult to assess the seriousness of the alleged conditions, or the need for treatment on the basis of the pleadings, under *Haines* we view the complaints as alleging serious medical needs.") However, Plaintiff has alleged no facts to suggest P.A. Wenzel knew of Plaintiff's serious medical need and deliberately disregarded that need. Plaintiff does not allege when P.A. Wenzel saw Plaintiff, what the circumstances were of the interaction, what Plaintiff reported to P.A. Wenzel regarding his medical needs, or whether this was anything but an isolated occurrence. None of the attached IIRs indicate that P.A. Wenzel responded to or failed to respond to Plaintiff's medical complaints or requests for treatment or had any involvement in the administration of Plaintiff's medication. (*See* [Filing No. 1-1](#).) Moreover, Plaintiff does not allege that he suffered any harm because of P.A. Wenzel's conduct. Plaintiff has failed to allege sufficient facts to state a plausible claim of deliberate indifference against P.A. Wenzel, and his claim against P.A. Wenzel is dismissed.[7] *See [Ellis](#)*, [890 F.2d at 1004](#) (dismissal of claims against prison nurse proper where "no specific allegations" made against nurse).

*3. Dr. Hustad and P.A. Danaher*

Plaintiff alleges that both Dr. Hustad and P.A. Danaher were responsible for the medical care of inmates housed at the LCC. ([Filing No. 1 at CM/ECF p. 2](#).) Plaintiff plausibly alleges that both Dr. Hustad and P.A. Danaher were aware of

---

[7] As with P.A. Finn, Plaintiff's claim for prospective injunctive relief against P.A. Wenzel is also moot based on his transfer to the LCC. *See* footnote 2, *supra*.

10

Plaintiff's medical needs, his complaints of extreme pain, and that outside prison doctors had ordered certain treatments and medications. Despite this knowledge, they refused to administer Plaintiff the necessary treatments and medications recommended by Plaintiff's outside physicians. Specifically, Plaintiff alleges that one specialist "even recommended a stronger pain medication and P.A. Danaher refused to give this medication to [Plaintiff] and ordered a less stronger medication for his pain so as [Plaintiff] had to suffer in pain." (*Id*. at CM/ECF p. 3.) Further, Plaintiff alleges "P.A. Danaher also told the Plaintiff that because he complained so much about being in pain [P.A. Danaher] did not believe that he was in pain and took him off all of his pain medication even though the[re] is written documentation and [a] specialist that say he needs pain medication." (*Id*.) Plaintiff alleges that Dr. Hustad oversees P.A. Danaher and knew of Plaintiff's medical needs but failed to ensure Plaintiff received the treatment he needs. The IIRs attached to Plaintiff's Complaint show that Dr. Hustad consulted with P.A. Danaher about Plaintiff's medical complaints and personally responded to some of Plaintiff's IIRs about his medical issues. (Filing No. 1-1 at CM/ECF pp.11, 13–14.)

Liberally construed, the conduct of Dr. Hustad and P.A. Danaher could constitute deliberate indifference to Plaintiff's serious medical needs. Therefore, at this early stage in the proceedings, the court finds Plaintiff has adequately pled an Eighth Amendment claim against defendants Dr. Hustad and P.A. Danaher.

*4. Dr. Deol*

Plaintiff also alleges Dr. Deol, the NDCS Medical Director, was deliberately indifferent to Plaintiff's medical needs and "knew or should have known" about Plaintiff's medical needs and lack of treatment "when he oversees all of the Department of Medical and is the one whom approves all Medical procedures and treatments being done to any prison inmate . . . and is the one whom told all his staff to make cuts in spending and to stop treating some things." (Filing No. 1 at CM/ECF p. 5.)

11

"It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

Liberally construed, Plaintiff alleges that Dr. Deol knew of his medical needs and need for treatment but determined that treatments or medications needed by Plaintiff would not be provided. (*See* Filing No. 1-1 at CM/ECF p. 11.) Further, he alleges that Dr. Deol is responsible for the operation of the NDCS medical department, all medical staff, and for approving all treatments and procedures. At this stage of the proceedings, Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against administrative/supervisory defendant Dr. Deol.

After careful review of Plaintiff's Complaint, the court finds Plaintiff has stated plausible claims for relief against defendants Dr. Deol, Dr. Hustad, and P.A. Danaher in their official and individual capacities. The court cautions Plaintiff that this is only a preliminary determination based on his allegations and is not a determination of the merits of his claims or potential defenses thereto.

## IV. OTHER PENDING MOTIONS

### A. Motion for Appointment of Counsel

With his Complaint, Plaintiff filed a motion seeking the appointment of counsel. (Filing No. 4.) The court cannot routinely appoint counsel in civil cases. In *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or

statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *Id.* Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

**B. Motion for Summons**

Plaintiff filed a motion asking the clerk of the court to issue summons for service upon the Defendants in their official and individual capacities. (Filing No. 5.) Plaintiff's motion is granted to the extent consistent with this Memorandum and Order.

**C. Motion for Status and for Copies**

On August 8, 2018, Plaintiff filed a motion (filing no. 14) inquiring as to the status of the case and asking for "a copy of any such order[s] that have been issued on this case" due to prison staff conducting a room search and removing many of his documents related to this litigation. Plaintiff's motion for status is granted consistent with this Memorandum and Order. The court has completed its initial review of Plaintiff's Complaint and the case may proceed to service of process as the court has outlined. The Defendants will have 21 days to answer the Complaint after they are served with summons. *See* Fed. R. Civ. P. 12(a)(1)(A).

With respect to Plaintiff's request for copies of all orders in this case, the court will grant his request and direct the clerk's office to provide Plaintiff with a copy of Filing No. 10 and Filing No. 11, the orders granting Plaintiff's motion to proceed in forma pauperis and requiring Plaintiff to show cause for failure to pay

13

the initial partial filing fee,[8] respectively. Copies of these orders would have been sent to Plaintiff upon filing, and in light of the circumstances described by Plaintiff, the court will grant this one-time courtesy. However, Plaintiff should be mindful to exercise due care in maintaining his legal documents related to this case. The statutory right to proceed in forma pauperis does not include the right to receive copies of documents without payment. 28 U.S.C. § 1915; *see also Haymes v. Smith*, 73 F.R.D. 572, 574 (W.D.N.Y.1976) ("The generally recognized rule is that a court may not authorize the commitment of federal funds to underwrite the necessary expenditures of an indigent civil litigant's action.") (citing *Tyler v. Lark,* 472 F.2d 1077, 1078 (8th Cir.1973)). If Plaintiff requires copies of court documents in the future, he will need to contact the clerk's office to determine the proper method of requesting and paying for copies.

## V. CONCLUSION

In light of the liberal construction afforded to pro se litigants' pleadings, the court finds that Plaintiff has sufficiently alleged an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs against defendants Dr. Deol, Dr. Hustad, and P.A. Danaher. Plaintiff's claims may proceed to service of process against these defendants in their *individual* capacities, and only his claim for prospective injunctive relief may proceed against them in their *official* capacities.

However, Plaintiff has failed to allege plausible Eighth Amendment deliberate indifference claims against defendants P.A. Flinn and P.A. Wenzel, and his claims against them are dismissed. Additionally, Plaintiff's claims for monetary and declaratory relief against all the Defendants in their *official* capacities are barred by the Eleventh Amendment and must be dismissed. These claims may not proceed to service of process.

---

[8] Plaintiff paid the initial partial filing fee soon after the show cause order was entered. (*See* Docket Sheet.)

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Appointment of Counsel (filing no. 4) is denied.

2. Plaintiff's Motion for Summons (filing no. 5) is granted to the extent consistent with this Memorandum and Order.

3. Plaintiff's Motion for Status and Motion for Copies (filing no. 14) is granted. The clerk's office is directed to send Plaintiff a copy of Filing No. 10 and Filing No. 11.

4. This action may proceed to service of process as to Plaintiff's Eighth Amendment claims against defendants Dr. Deol, Dr. Gary J. Hustad, and Dan Danaher in their *individual* capacities, as well as in their *official* capacities for prospective injunctive relief only.

5. Plaintiff's claims against defendants Cheryl Flinn and Vaughan Wenzel in their individual and official capacities are dismissed, and defendants Flinn and Vaughan are dismissed from this action. Plaintiff's official-capacity claims against defendants Deol, Hustad, and Danaher for monetary and declaratory relief are dismissed as well.

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

7. For service of process on defendants Dr. Deol, Dr. Gary J. Hustad, and Dan Danaher in their official capacities, the clerk of the court is directed to complete summons forms and USM-285 forms for defendants Dr. Deol, Dr. Gary J. Hustad, and Dan Danaher using the address "Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509," and forward them together with

a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve defendants Dr. Deol, Dr. Gary J. Hustad, and Dan Danaher in their official capacities at the office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509.** *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02 (Reissue 2016).[9]

8. For service of process on defendant Dr. Deol in his individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for defendant Dr. Deol using the address "Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE 68522," and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve defendant Dr. Deol personally in his individual capacity at the Nebraska Department of Correctional Services, 801 West Prospector Place, Lincoln, NE 68522.** Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

9. For service of process on defendant Dr. Gary J. Hustad in his individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for defendant Dr. Gary J. Hustad using the address "Lincoln Correctional Center, 3216 West Van Dorn Street, Lincoln, NE 68522," and

---

[9] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties in such cases." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve defendant Dr. Gary J. Hustad personally in his individual capacity at the Lincoln Correctional Center, 3216 West Van Dorn Street, Lincoln, NE 68522.** Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

10. For service of process on defendant Dan Danaher in his individual capacity, the clerk of the court is directed to complete a summons form and a USM-285 form for defendant Dan Danaher using the address "Lincoln Correctional Center, 3216 West Van Dorn Street, Lincoln, NE 68522," and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve defendant Dan Danaher personally in his individual capacity at the Lincoln Correctional Center, 3216 West Van Dorn Street, Lincoln, NE 68522.** Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).

11. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

12. The clerk of the court is directed to set the following pro se case management deadline: **November 23, 2018**: check for completion of service of process.

Dated this 24th day of August, 2018.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge